year, and that either the usual signals or some adequate warning should have been given by those in charge of approaching trains. Planks had been maintained at the crossing, and the defendant had acquiesced in the user of this crossing, and especially in hauling ice over it, which use, although temporary, was extensive during the week the work was in progress. This use, assented to by the defendant, was tantamount to a license, and imposed upon it the duty of exercising reasonable care in order to safeguard those passing over this dangerous crossing. Barry v. N. Y. C. & H. R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377; Byrne v. N. Y. C. & H. R. R. Co., 104 N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512; Lamphear v. N. Y. C. & H. R. R. Co., 194 N. Y. 172, 86 N. E. 1115; Foley v. N. Y. C. & H. R. R. Co., 132 App. Div. 506, 117 N. Y. Supp. 956; McCarty v. N. Y. C. & H. R. R. Co., 73 App. Div. 34, 76 N. Y. Supp. 321.

Gilbert was not a trespasser. He was crossing the track lawfully and in a manner long permitted. There may have been no necessity for giving the usual warning signals at this crossing at all times, and we are not holding that the defendant was charged with any such obligation. The object of the signals at a crossing is to warn people intending to cross over of a coming train. If it is a private crossing, and the use known and assented to by the railroad company becomes frequent and extensive, even for a short period, the defendant must in some way warn people when a train approaches. Permitting the use, it was charged with the duty of reasonable precaution to protect Gilbert and the others hauling ice over this crossing. The prevention of injury or death required it. I think the case should have been submitted to the jury.

Judgment reversed, and a new trial granted, with costs to appellant to abide event. All concur, except McLENNAN, P. J., and ROBSON, J., who dissent.

---

(65 Misc. Rep. 62.)

### GEORGE E. LOEFFLER CO. v. SNYDER.

(Supreme Court, Appellate Term. November 12, 1909.)

VENDOR AND PURCHASER (§ 182*)—CONTRACTS OF SALE—PAYMENT IN INSTALLMENTS—RIGHT OF VENDOR.

A contract for the sale of real estate, stipulating for payment in monthly installments, and providing that the agreement shall terminate and all payments thereunder become the property of the vendor on default in any monthly payments, if such default continue for 60 days after maturity, is not terminated, in any event, until 60 days after the failure to pay a monthly installment, and installments accruing prior to the expiration of the 60 days are recoverable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 352; Dec. Dig. § 182.*]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by the George E. Loeffler Company against Charles Snyder. From a judgment of dismissal, plaintiff appeals. Reversed, and new trial ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Sternberg, Jacobson & Pollock, for appellant.

John T. Fenlon, for respondent.

PER CURIAM. On October 19, 1908, the parties entered into a written contract by which defendant was to purchase from plaintiff certain lots of land, for which defendant was to pay the sum of $400 as follows: Twenty dollars on the execution of the contract, and $20 on the 10th day of each month until the full sum was paid. Defendant made only one payment, the first $20. Plaintiff sues for the installments due on the 10th days of November, 1908, December, 1908, January, 1909, February, 1909, March, 1909, and April, 1909; i. e., six months' installments, amounting to $120. The contract provides thus:

"This agreement shall terminate, and all payments thereunder become the property of the party of the first part [plaintiff], upon default in any monthly payment, if such default continue for a period of 60 days after such payment becomes due."

Plaintiff did not bring his action until a considerable time after the expiration of the 60 days following November 10, 1908, the date of the first default. The defendant claims that the agreement, therefore, had terminated prior to the bringing of the action, and that plaintiff was only entitled to retain the payments that had been paid prior to the termination of the agreement; i. e., $20.

Under this clause, according to the theory of defendant, the purchaser had the right to repudiate the agreement at any time upon forfeiting all payments made by him. This does not seem to be the doctrine of Morris v. Green, 62 App. Div. 460, 70 N. Y. Supp. 1096, where the court, in construing a similar clause in a contract, said:

"The whole clause, providing for the vendor's discharge from his covenants and the forfeiture of the vendee's payments, is clearly a condition in favor of the former, not the latter. The vendee was bound to pay at all events. If he had failed, even after having made payments, the vendor might consider the contract at an end and sell the land to another. If, however, he chooses not to do so, but hold the vendee to his contract, he has an undoubted right to enforce it by compelling payment. A contrary doctrine would be allowing the vendee to take advantage of his own negligence, without any advantage to the vendor, but rather an injury, as he is, in the meantime, prohibited from selling the land to any other purchaser."

Moreover, the contract, under the terms of said clause, did not state that the vendor should only have the money actually paid as liquidated damages, and the contract did not, in any view, terminate until 60 days after November 10, 1908, which would be after January 1, 1909, so that the installments for the months of November and December, at least, would seem to have already accrued prior to the alleged termination of the contract. The judgment in favor of the defendant, dismissing the complaint on the merits, cannot be sustained.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.